UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAMELA REILLY,

                                    Plaintiff,      18-CV-1269-FPG
v.                                            DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

## INTRODUCTION

On October 28, 2018, Plaintiff filed an application for disability insurance benefits ("DIB") alleging disability beginning on March 19, 2013. Tr.[1] at 92. After the application was denied, Plaintiff timely requested a hearing. Tr. 117-18. On April 14, 2017, Plaintiff appeared with her attorney, Jennifer Dillon, Esq., and testified before Administrative Law Judge Mary Mattimore ("the ALJ"). Tr. 35-91. A Vocational Expert ("VE"), Timothy Janikowski, also testified at the hearing. Tr. 78-88. The ALJ issued an unfavorable decision on June 2, 2017. Tr. 14-29. Plaintiff then requested review by the Appeals Council, which the Council denied on September 13, 2018, making the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Plaintiff subsequently brought this action pursuant to Title II of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner which denied her application for DIB.[2] ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 10, 17. For the reasons that follow, Plaintiff's motion for judgment on the pleadings is DENIED, the Commissioner's motion is GRANTED, and the Commissioner's decision is AFFIRMED.

---

[1] "Tr." refers to the administrative record in the matter. ECF No. 7.

[2] The Court has jurisdiction over this matter under 42 U.S.C. § 405 (g).

1

## LEGAL STANDARD

### I. District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments,

the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2019. Tr. 16. At Step One of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 19, 2013. *Id.*

At Step Two, the ALJ found that Plaintiff suffered from several severe impairments: cervical disc herniation at C5-6 and C6-7 status post discectomy and fusion; left shoulder pain; left arm weakness; and loss of use of the left hand. *Id.* She further determined that Plaintiff's anxiety was not a severe impairment. Tr. 17. At Step Three of the analysis, the ALJ found that the severity of Plaintiff's impairments did not meet or equal the criteria of any Listing. *Id.* The ALJ then determined that Plaintiff retained the RFC to perform light work, as defined by the regulations, except that she could lift and carry ten pounds frequently and twenty pounds occasionally; could stand and walk for two to three hours in an eight-hour workday, but only for thirty minutes at a time; could sit for six hours in an eight-hour workday, but would have a sit/stand option every thirty minutes. The ALJ also determined that Plaintiff can occasionally reach overhead and push/pull with her left non-dominant extremity, and occasionally climb ladders, ropes, stairs, scaffolds, kneel, crouch, and crawl. Tr. 17.

At Step Four, the ALJ found that Plaintiff was not capable of performing her past relevant work. Tr. 27. The ALJ then proceeded to Step Five, where she determined that there were jobs in the national economy that a person of Plaintiff's age, education, and work experience could perform. Tr. 18-19. Specifically, the ALJ found that Plaintiff could work as a cashier II, office helper, and information clerk. Tr. 28.

**II.   Analysis**

Plaintiff advances several arguments in support of her motion. ECF No. 10 at 14-26. First, she argues that the ALJ failed to resolve a conflict between the VE's testimony about the jobs she could perform and the description of such jobs provided by the Dictionary of Occupational Titles ("DOT"). *Id.* at 16-20. Plaintiff also argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ incorrectly assigned weight to the medical opinions

4

contained in the record. *Id.* at 20-24. Lastly, Plaintiff argues that the Appeals Council erred when it denied review of the evidence she submitted after the ALJ issued her decision. *Id.* at 24-26. The Court disagrees with Plaintiff for the following reasons.

A. Conflict between the VE's testimony and the DOT

As a general matter, the regulations provide that a claimant is ineligible for disability insurance benefits unless she suffers from an impairment of "such severity that [s]he is not only unable to do [her] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423 (d)(s)(A). However, even when the claimant is impaired and cannot perform her previous work, the regulations provide that the ALJ may consider the claimant's RFC, along with her age, education, and work experience, to determine if the claimant can adjust to other work. *See* 20 C.F.R. § 404.1520 (a)(4)(v). When such adjustment can be made, the claimant is found to be not disabled. *Id.*

It has been well-recognized that in Step 5 of the sequential analysis the ALJ may elicit testimony from a VE to determine whether a claimant's work skills can be used in other work, identify the existence of the specific occupations in which such skills can be used, or resolve complex vocational issues. *See* 20 C.F.R. § 404.1566(e). A 2002 Social Security Administration Policy Ruling[3] ("SSR") defines the ALJ's burden in Steps 4 and 5, and indicates that the ALJ primarily relies "on the DOT . . . for information about the requirements of work in the national economy" when making a determination about the existence of jobs available to the claimant. *See* SSR 00-4P, 2000 WL 1898704, at *1, 2 (S.S.A. Dec. 4, 2000). If the ALJ decides to utilize services

---

[3] SSRs "are binding on all components of the Social Security Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA has] adopted." 20 C.F.R. § 402.35(b)(1).

5

of the VE at the hearing, the VE's testimony "generally should be consistent with the occupational information supplied by the DOT." *Id.* The ALJ is required to "inquire, on the record, as to whether or not there is such consistency" between the VE's testimony and the DOT, and "[w]hen there is an apparent unresolved conflict between VE . . . and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE['s testimony] . . . to support a determination or decision about whether the claimant is disabled." *Id.* at *1-2, 4; *see also Lockwood v. Comm'r of Soc. Sec.*, 914 F.3d 87, 91 (2d Cir. 2019) ("[T]he [r]uling tasks the Commissioner with 'an affirmative responsibility to ask about any possible conflict, and to 'elicit a reasonable explanation for [any such] conflict before relying on the [VE's testimony][.]" (internal citations omitted)).

Here, at Step 5 of the analysis, the ALJ formed a hypothetical that involved an individual, who, among other things, was able to perform a reduced range of light work; lift and carry ten pounds frequently and twenty pounds occasionally with the right dominant extremity; stand and walk up to three hours in a workday, but only for 30 minutes at any time; and sit for six hours in an eight-hour workday with the ability to switch from sitting to standing every 30 minutes. Tr. 82. In response to the hypothetical, the VE testified that Plaintiff would be unable to perform her past work of a director of food services and kitchen supervisor because both jobs involved standing and walking for at least six hours in an eight-hour workday and did not allow alternation between sitting and standing. Tr. 83-84. The VE indicated that Plaintiff would be able to perform her past job as a director of food services at St. Francis school, which was sedentary in exertion. Tr. 83. Proceeding with his testimony, the VE identified three jobs – cashier II, office helper, and information clerk – that an individual of Plaintiff's age, education, and work experience could perform. Tr. 84-85. Plaintiff now argues that these occupations require light exertion according

to the DOT, which, she submits, are inappropriate for an individual, such as her, who could stand and walk up to three hours in an eight-hour workday, restrictions that are more geared towards occupations with sedentary exertion. ECF No. 10 at 16-18. The Commissioner objects arguing that the VE's testimony did not conflict with the DOT because the DOT provides generic job descriptions that list maximum requirements for each position, rather than their range, which may not coincide with the content of jobs as performed in particular establishments. ECF No. 17 at 22-23.

There is no dispute between the parties that the DOT defines each job identified by the VE as a job of light exertion, *i.e.*, a job that "requires a good deal of walking or standing" "off and on, for a total of approximately [six] hours of an [eight]-hour workday," where "sitting may occur intermittently during the remaining time." 20 C.F.R. § 404.1567(a)(b); SSR 83-10, 1983 WL 31251, at *5 (S.S.A. Jan 1, 1983)[4]; *see also* DOT – Cashier II #211.462-010, 1991 WL 671840; DOT – Office Helper #239.567-010, 1991 WL 672232; DOT – Information Clerk #237.367-018, 1991 WL 672187. The ALJ's hypothetical, however, involved an individual who would be able to stand and walk up to three hours in a workday, sit for six hours in an eight-hour workday, but who would also require a sit/stand option every thirty minutes. Tr. 82. Therefore, Plaintiff argues, these exertional limitations were more consistent with sedentary exertion classification that provides for a claimant to stand and walk for no more than two hours, and sit for approximately six hours in an eight-hour workday. *See* SSR 83-10 at *5. While Plaintiff's argument may have some merit when it comes to Plaintiff's sitting and standing limitations that appear to be consistent

---

[4] Light work can also include jobs that "involve sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work." SSR 83-10 at *5. The SSR provides that "[r]elatively few unskilled light jobs are performed in a seated position." *Id.*

7

with sedentary work, other elements of her RFC, for example, the lifting requirement, are consistent with light work. What is obvious is that Plaintiff's RFC falls into a category of those special situations that do not coincide with the definition of any one of the ranges of work as defined by the regulations. *See* SSR 83-12, 1983 WL 31253, at *4 (S.S.A. Jan. 1, 1983) (an individual who "may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting . . . is not functionally capable of doing . . . the prolonged sitting contemplated in the definition of sedentary work. . . . Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will"); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) ("[T]he concept of sedentary work contemplates substantial sitting . . . , [and] alternating between sitting and standing may not be within the concept of sedentary work."). When an ALJ encounters such situations, particularly if one is complex, the rulings provide that she may utilize a VE, who can

> access the effect of any limitations on the range of work at issue . . . , advise whether the [claimant's] RFC permits . . . her to perform substantial numbers of occupations within the range of work at issue; identify jobs which are within the RFC, if they exist; and provide a statement of the incidence of such jobs in the region in which the person lives or in several regions of the country.

SSR 83-12 at *3.

Because it has been well-established that the DOT does not address the alternation between sitting and standing in its job descriptions, *Reisinger v. Comm'r of Soc. Sec.*, No. 7:16-CV-428(ATB), 2017 WL 2198965, at *10 (N.D.N.Y. May 18, 2017) (collecting cases), the VE's testimony here did not contradict the DOT's description of the three jobs he found Plaintiff could perform. *Id.* ("[W]hen the DOT does not specifically provide for a particular restriction, there is no 'actual conflict' between the VE's testimony and the DOT, and before the VE is asked to 'resolve a conflict, one must actually exist.'"). In fact, the VE clearly and affirmatively pointed to

the DOT's lack of alternation between sitting and standing in its job descriptions to the ALJ, and indicated that his analysis of the jobs Plaintiff could perform was based on labor market surveys he conducted and not on the DOT's description of the jobs. Tr. 84-86. Because the DOT does not address the alternation of postural positions in its description of occupations, there was no conflict between the VE's testimony about the jobs that allowed for alternation between sitting and standing and the DOT that the ALJ had to resolve. In fact, the ALJ did exactly what she was required to do – she invited the VE to provide his professional opinion about Plaintiff's ability to perform her past work or other work in accordance with the RFC, inquired into the inconsistency between the VE's testimony and the DOT's jobs descriptions after the VE had pointed it out, questioned the VE about Plaintiff's ability to perform light and sedentary work, and lastly considered the VE's testimony in her analysis to determine that there were at least three jobs of light exertion available in the national economy that Plaintiff could perform despite her limitations. *See Pitts v. Colvin*, No. 14-CV-317S, 2015 WL 3823781, at *6 (W.D.N.Y. June 19, 2015) (the ALJ properly relied on the VE's testimony because there was no actual conflict between it and the DOT because the DOT does not address the availability of a sit/stand option in its job description); *Miller v. Astrue*, No. 11-CV-4103 (DLI), 2013 WL 789232, at *8 (E.D.N.Y. Mar. 1, 2013) (no conflict existed where the VE identified jobs classified as light to accommodate Plaintiff's standing and walking limitations, and where the inconsistency with the DOT was explored by the ALJ at the hearing and in the decision); *but see Gallegos v. Colvin*, No. 3:13cv393 (JBA), 2014 WL 4635418, at *23 (D. Conn. Sept. 11, 2014) ("[T]he vocational expert did not identify the conflict, *i.e.*, acknowledge that the sit/stand option is not in the DOT, nor did the ALJ receive a reasonable explanation for the conflict by way of the vocational expert explaining whether in his experience, or whether other data reveals that, the number of available jobs would be reduced accounting [sic]

9

for the sit/stand option."). Therefore, the Court does not find an error in the ALJ's reliance on the VE's testimony in Step 5 of the sequential analysis.

B.     <u>ALJ properly weighed medical opinions contained in the record</u>

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (S.S.A. July 2, 1996)). "The work functions likely to be limited depend on many factors, including the particular limitations and symptoms caused by the claimant's medically determinable impairments." *Lowe v. Colvin*, No. 6:15-cv-06077(MAT), 2016 WL 624922, at *5 (W.D.N.Y. Feb. 17, 2016).

It is well-settled that when making an RFC assessment, an ALJ must consider all the relevant evidence, including medical opinions and facts, claimant's physical and mental abilities, non-severe impairments, and subjective evidence of symptoms that could interfere with work activities on a regular and continuing basis. 20 C.F.R. §§ 404.1545(a)-(e). The ALJ is required to consider medical opinions in her RFC assessment because they reflect judgments about the nature and severity of the claimant's impairments, and explain what the claimant can still do despite those impairments. 20 C.F.R. § 404.1527(a); *see also Lowe*, 2016 WL 624922, at *5 ("RFC is a medical assessment; therefore, the ALJ is precluded from making his assessment without some expert medical testimony or other medical evidence to support his decision.") (citations omitted). Generally, the ALJ must defer to an opinion of a claimant's treating physician when formulating the claimant's RFC. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal and other citations omitted). The medical opinion of the claimant's treating physician is entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."

10

20 C.F.R. § 404.1527(a)(2), (c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citations omitted). If the ALJ determines that the opinion of a treating physician is not entitled to controlling weight, she must decide how much weight, if any, to give the opinion and must comprehensively articulate her reasons for the weight assigned to it. *Halloran*, 362 F.3d at 32 (citations omitted). The ALJ's "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted).

Here, Plaintiff argues that the ALJ failed to afford substantial weight to the opinion of her treating physician Dr. Ogorchock and, instead, found the opinion of a consultative examiner and an independent medical examiner to be more consistent with the record as a whole. Tr. 26. The Court disagrees.

In her check-box functional capacity assessment, Dr. Ogorchock opined that Plaintiff was limited to occasionally lifting and carrying five pounds and frequently two to three pounds; standing no more than two hours a day and using a neck brace if standing over one hour; sitting less than three to four hours per day; and pushing or pulling with her left upper extremity. Tr. 599. Dr. Ogorchock also opined that Plaintiff needed to be reclined slightly for six to seven hours per day because it was the only position that relieved her back pain. *Id.* However, this opinion was not consistent with Dr. Ogorchock's own treatment records, as well as the rest of the record that did not fully support the level of limitations identified by Dr. Ogorchock. *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) ("It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence, . . . and the report of a consultative physician may constitute such evidence.") (internal citations omitted). Specifically, in March 2013, Plaintiff was involved in a motor vehicle accident, after which she started to

11

experience pain in her neck and shoulders. Tr. 272. Diagnostic imagining of Plaintiff's neck did not indicate any evidence of fracture or dislocation of the neck or left shoulder, and even though she became diagnosed with left shoulder impingement and trapezius muscle spasm, the images showed that her cervical spine was well-aligned and unremarkable. Tr. 270, 273, 401. An MRI showed that Plaintiff had mild multilevel facet arthropathy within the cervical spine at C5-C6 and C6-C7 levels, but had no evidence of canal or foraminal narrowing. Tr. 295, 376. Independent medical examiner noted Plaintiff's slight decrease in the range of motion of her neck, but also indicated Plaintiff's full range of motion in her shoulders, full motor strength in her upper extremities, and the lack of shoulder impingement or sensory deficits. Tr. 413. He opined that Plaintiff was able to perform all daily activities, except for heavy lifting and carrying, as well as all duties of her occupation. *Id.*

Even though six months after the accident Plaintiff elected to undergo a cervical spinal fusion at C5-C6 and C6-C7 levels, the record indicates that the surgery was not needed. Tr. 276-78. Specifically, Dr. Sergeto, a neurosurgeon reviewing the medical necessity for the surgery for an insurance company, opined that Plaintiff's surgery "was not medically necessary at the time it was performed" because there was no evidence of any neurological deficits, trauma, muscle weakness, or severe and progressive sensory deficits that warranted surgical intervention. Tr. 407. Following the surgery, despite Plaintiff having intermittent pain in her left hand, arm, and shoulder that radiated from her cervical spine, Dr. Mills, an orthopaedic surgeon, opined that there was no need for post-surgical physical therapy, household help, massage therapy, or any further surgery. Tr. 403. He indicated that Plaintiff could return to work and perform activities of daily living as she did prior to the accident. *Id.* Treatment records of Plaintiff's primary treating providers Dr. Ogorchock and Dr. Egnatchik, as well as her other medical providers, demonstrated that Plaintiff

often had non-remarkable examinations without any musculoskeletal complaints, mild symptoms associated with neck and shoulder, and full range of motion in both of Plaintiff's upper extremities. Tr. 273, 366, 369, 376, 397, 420, 503-04, 633-34, 646. A 2016 MRI showed minimal spurring, no evidence of disc bulge or protrusion, and grossly intact hardware from the cervical spinal fusion surgery Plaintiff underwent in September 2013. Tr. 590. Dr. Egnatchik noted that Plaintiff's MRI looked "as normal as it possibly could considering she had two levels of the cervical spine fused." Tr. 597. During Plaintiff's visit with consultative examiner Dr. Liu, Plaintiff exhibited mild limitations in her cervical spine,[5] but demonstrated full range of motion in her shoulders, elbows, forearms, and wrists; her joints were stable; and she had full strength bilaterally in her hands and upper and lower extremities. Tr. 508-09.

The record also demonstrates that Plaintiff's treatment of neck and shoulder pain was conservative after the 2013 accident. *Thomas v. Comm'r of Soc. Sec. Admin.*, No. 19 CIV. 1177 (GWG), 2020 WL 4757059, at *14 (S.D.N.Y. Aug. 18, 2020) ("[C]ourts have found substantial evidence to support an ALJ's decision to discount an opinion where the opinion was 'not supported by the . . . treatment progress notes[,] which show that the claimant's condition was stable from conservative treatment with medication and therapy.'") (internal citations omitted). In fact, shortly after the accident, Plaintiff was prescribed oral anti-inflammatory medication, physical therapy, and cortisone injections, though, the injections were only advised once because Plaintiff was symptomatic during her examination. Tr. 273-74. With the exception of taking Oxycodone shortly after the accident, Plaintiff's pain management to treat her shoulder and neck pain consistent of non-narcotic medications, such as Ibuprofen and Motrin, or no medication at all. Tr. 366, 375,

---

[5] During Dr. Liu's examination. Plaintiff's cervical spine flexed and extended 40 degrees, rotated left to right 75 degrees, and had lateral flexion of 40 degrees. Tr. 508-09. Normal ranges of motion of the cervical spine are the following: flexion – 50 degrees, extension – 60 degrees, right and left rotation – 80 degrees, and right and left lateral flexion – 45 degrees. Tr. 412.

419, 507, 597, 647. The record also contains evidence of the progress Plaintiff made during physical therapy to the point where she continuously reported getting relief from the pain in her neck, and improvement in her overall condition and range of motion of her neck and shoulders. Tr. 420, 452-02, 504, 506, 519. Plaintiff continued to work full duty and did not miss one day of work after the accident.[6] Tr. 38, 273-74, 375.

Plaintiff takes issue with the ALJ relying on the opinion of the consultative examiner Dr. Liu to formulate her RFC. However, the Court finds that because "[a] consultative physician's opinion may serve as substantial evidence in support of an ALJ's decision," *Sloan v. Colvin*, 24 F. Supp. 3d 315, 326 (W.D.N.Y. 2014), the ALJ properly afforded great weight to Dr. Liu's opinion because his findings that Plaintiff had limitations in prolonged talking, bending, kneeling, and overhead reaching was consistent with the evidence described above. Tr. 509; *see also Camille v. Colvin*, 652 F. App'x 25, 27 (2d Cir. 2016) (summary order) (ALJ properly afforded less than controlling weight to a treating source opinion in a check-box form because it was inconsistent with substantial evidence in the record including the doctor's own treatment notes, the opinion of a consultative examiner, and intermittent treatment); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) ("[T]he opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may constitute such evidence."). Similarly, the Court does not find an error in the ALJ providing some weight to the opinion of Dr. Polavarapu, whose findings about Plaintiff's abilities to perform all activities of daily living and duties of her occupation, except for lifting and carrying limitations, were consistent with the record.

---

[6] Plaintiff indicated to some of her medical providers that she missed one day of work following the accident. Tr. 375, 413.

14

Plaintiff argues that Dr. Liu's opinion was issued prior to Plaintiff experiencing a deterioration on her hip and right knee, however, the record does not suggest that such impairments caused Plaintiff more than minimal limitations. *See Diaz-Sanchez v. Berryhill*, 295 F. Supp. 3d 302, 306 (W.D.N.Y. 2018) ("Where, as here, a claimant has sought little-to-no treatment for an allegedly disabling condition, [her] inaction may appropriately be construed as evidence that the condition did not pose serious limitations."). Most treatment records do not include complaints about hip and knee pain, and even though Plaintiff attended physical therapy for pain in the right knee, she discontinued it shortly after she started the therapy. Tr. 654, 659. Also, even if Plaintiff's hip and knee limitations were to cause her significant limitations, they would be accommodated by the limitations identified by the ALJ to perform only occasional climbing, stopping, kneeling, crouching, and crawling. Tr. 17.

C.  Records submitted to the Appeals Council for review

Plaintiff also argues that the Appeals Council improperly disregarded the July 11, 2017 functional capacity evaluation completed by Howard Physical Therapy (Tr. 665-75), as well as the July 20, 2017 letter from her treating physician Dr. Ogorchock (Tr. 663-75). ECF No. 10 at 24-26. She submits that both sets of records were new and material, and that there was a reasonable probability that they would have changed the ALJ's decision had they been reviewed by the Appeals Council. The Court disagrees.

It has been well-established that the Appeals Council must consider additional evidence submitted by a claimant after the ALJ's decision so long as it is new, material, and relates to the period on or before the ALJ's decision. *See* 20 C.F.R. § 416.1470 (a)(5), (b); *see also Lisa v. Sec'y of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991) ("An appellant must show that the proffered evidence is (1) 'new' and not merely cumulative of what is already in the

15

record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative.") (internal citations omitted). Evidence is "new" if it did not exist prior to the ALJ's decision, and is not cumulative of what is already in the record. *See Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) (summary order). Furthermore, evidence is "material" when it relates to the period on or before the date of the ALJ's decision, and is probative, meaning there is "a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Id.* "If the Appeals Council fails to fulfill its obligations under § [416.1470(b)] 'the proper course for the reviewing court is to remand for reconsideration in light of the new evidence.'" *Wilbon v. Colvin*, 15-CV-756-FPG, 2016 WL 5402702, at *5 (W.D.N.Y. Sep. 28, 2016) (internal citations omitted).

Plaintiff's argument fails because even though the records she submitted to the Appeals Council were not available at the time the ALJ issued her decision and relate to her conditions during the period for which benefits were denied, there is no reasonable possibility that their review would have led to a conclusion opposite to the one made by the ALJ. Specifically, Dr. Ogorchock's letter is almost identical to her April 6, 2017 letter that had been considered by the ALJ. Tr. 26, 601. The only difference between the two letters is in that Dr. Ogorchock's July 20, 2017 letter does not mention Plaintiff's need to remain in a reclined position, but makes references to a functional capacity assessment made by Howard Physical Therapy on July 11, 2017. Tr. 663, 666. As for the assessment, it was completed by Mark Howard, PT ("PT Howard"), a non-acceptable medical source, whose opinion generally would not be entitled to controlling weight. *See* 20 C.F.R. § 404.1527. Additionally, several functional limitations identified in the assessment were more restricting than the ones identified by the ALJ in Plaintiff's RFC, while others were similar to the ALJ's. Tr. 17, 666, 675. PT Howard's findings regarding Plaintiff's limited

16

tolerance for sitting, standing, and walking, restrictions in reaching, kneeling, and crouching, as well as the need for positional changes, are fully incorporated into Plaintiff's RFC. Tr. 17, 673, 675. As to the weight he identified Plaintiff could lift, the Court does not find it erroneous because the ALJ's conclusions need not perfectly correspond with any of the opinions of medical sources contained in the record as the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (internal quotations and citations omitted). Therefore, PT Howard's assessment, as well as Dr. Ogorchock's July 20, 2017 letter, were cumulative of what has already been considered by the ALJ prior to her issuing the decision. As such, the Court finds that the Appeals Council did not err when it denied review of Plaintiff's records submitted after the ALJ's decision.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 10) is DENIED, the Commissioner's motion for judgment on the pleadings (ECF No. 17) is GRANTED. The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: November 5, 2020
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court